This case involves a claim filed against the City of Daphne ("City") by the plaintiff, Wade D. Lott, for property damage allegedly caused by the City's storm drainage *Page 243 
system. The plaintiff appeals from a judgment based on a directed verdict in favor of the City. We reverse and remand.
The plaintiff owns a parcel of property consisting of approximately five acres situated on Mobile Bay and within the city limits of Daphne, Alabama. A large natural gully known as "Mazie's Gulch" traverses property owned by a number of other parties before it crosses Lott's property and empties into Mobile Bay. In 1977, Cedar Hill Subdivision was developed east of Lott's property and within the drainage basin of Mazie's Gulch. Prior to allowing the development of the subdivision, the City required the developer to design and construct a system to collect, channel, and drain the storm water from the subdivision into the City's existing storm water drainage system. The City's system consists of a series of underground pipes and junction boxes that eventually discharge storm water from the area surrounding Mazie's Gulch into the head of Mazie's Gulch. In order to offset the effect of an increased volume and velocity of water running from the subdivision into Mazie's Gulch, the City required the developers to install an energy suppressor at the head of Mazie's Gulch. Since the development of the subdivision, the City has maintained the drainage system, including the energy suppressor located within Mazie's Gulch. Beyond the suppressor, however, the City has never maintained any area of Mazie's Gulch leading down through the plaintiff's property and into Mobile Bay.
The plaintiff alleges that soon after the subdivision was built, he noticed an increased flow of water into Mazie's Gulch that began to cause his property to seriously erode. In an attempt to protect his house, which was located near the edge of the gully, he built a bulkhead system. The plaintiff and his daughter made numerous requests to the City to have the drainage system in the area controlled so as to prevent the erosion, and they filed a claim for damages with the City. They received no relief, and thus Lott sued in April 1986.
Lott's primary contention in his complaint against the City was based in negligence. He claimed that the City had a duty to maintain Mazie's Gulch as part of its drainage system and that its failure to do so constituted a breach of that duty which resulted in damage to his property. The case proceeded to trial by jury, but at the close of all the evidence, the trial court directed a verdict in favor of the City.
The standard of review of a directed verdict is well established:
 "A directed verdict is proper only where there is a complete absence of proof on an issue material to the claim or where there are no disputed questions of fact on which reasonable people could differ. Deal v. Johnson, 362 So.2d 214
(Ala. 1978). In considering a motion for directed verdict, the court must apply Rule 59(e), ARCP, under which 'a question must go the jury, if the evidence, or any reasonable inference arising therefrom, furnishes a mere gleam, glimmer, spark . . . or a scintilla in support of the theory of the complaint. . . .' Dixie Electric Company v. Maggio, 294 Ala. 411, 318 So.2d 274 (Ala. 1975).
 "In addition, the trial court must view the entire evidence, and all reasonable inferences which a jury might have drawn therefrom, in the light most favorable to the non-moving party. Alabama Power Company v. Taylor, 293 Ala. 484, 306 So.2d 236 (1975); Vintage Enterprises, Inc. v. Cash, 348 So.2d 476 (Ala. 1977). Also, this Court's function in reviewing a motion for a directed verdict is to review the tendencies of the evidence most favorably to the non-movant, regardless of a view we may have as to the weight of the evidence, and we must allow such reasonable inferences as the jury were free to draw, not inferences which we may think the more probable. Beloit Corp. v. Harrell, 339 So.2d 992 (Ala. 1976)."
Caterpillar Tractor Co. v. Ford, 406 So.2d 854, 856 (Ala. 1981).
The City contends on appeal that the trial court was correct in granting the directed verdict because the plaintiff failed to present even a scintilla of evidence tending to show either (1) that the City had a duty *Page 244 
to maintain Mazie's Gulch, or (2) that the City's drainage system caused the erosion problems on Lott's property. We will confine this opinion to these two arguments.
The key issue in this case is whether the City has the right to drain water across the plaintiff's property, and if so, to what extent such right exists. Code of 1975, § 11-50-50, authorizes municipalities to construct and maintain drainage systems. Although a municipality has no duty to provide for or to maintain the proper drainage of surface waters, once a municipality undertakes to either construct or maintain a drainage system, a duty of care exists, and a municipality may be liable for damages to a property owner whose property is damaged as a result of the negligent construction or maintenance of a drainage system by the City. Kennedy v. Cityof Montgomery, 423 So.2d 187, 188 (Ala. 1982). See also,Hendrix v. Creel, 292 Ala. 541, 297 So.2d 364 (1974); Fricke v.City of Guntersville, 254 Ala. 370, 48 So.2d 420 (1950).
The evidence at trial clearly presented sufficient facts for the jury to conclude that the City undertook to construct and/or maintain the drainage system in question. The mayor of Daphne, Victor Guarisco, and Daphne's former city engineer, Arthur Rigas, both testified that the City had constructed various pipes and junction boxes leading from the areas surrounding Mazie's Gulch to carry storm water that eventually emptied into Mazie's Gulch. Prior to the construction of the Cedar Hill Subdivision, the City required the developers to construct a drainage system that fed into the City's system, and to construct an energy suppressor at the head of Mazie's Gulch where the City's system emptied. Moreover, both witnesses testified that the City had continually maintained the drainage system. These facts clearly show that the City had undertaken the responsibility for insuring the proper drainage of storm water from the areas surrounding Mazie's Gulch. However, the City contends that although it has maintained the drainage system surrounding Mazie's Gulch, it has never undertaken to maintain the gully itself and, therefore, is under no duty to maintain it. We cannot agree with such reasoning.
First, the facts show that the City has undertaken to maintain Mazie's Gulch itself. Arthur Rigas testified that the City repaired the energy suppressor, located at the head of Mazie's Gulch, at least once to protect the gully from erosion. More important, however, is the testimony of Mayor Guarisco that the City had been using Mazie's Gulch as an important part of the City's drainage system for the surrounding area. As noted above, once a municipality undertakes to maintain a "drainage system," a duty of care attaches in the maintenance thereof. Kennedy, supra.
Consequently, Mazie's Gulch being an integral part of the City's drainage system, it is subject to the same standards of due care to be exercised by the City in preventing harm to adjoining property owners. The fact that the City has failed or refused to maintain the gully is some evidence of the City's negligence. To hold otherwise would permit the City to channel any volume of water into Mazie's Gulch without taking any responsibility for its consequences to the landowners below.Cf. City of Mountain Brook v. Beatty, 292 Ala. 398, 506,295 So.2d 388, 394 (1974) ("the prescriptive right to drain carries with it the corresponding duty to maintain the ditch in such a condition that the water cast into the ditch by the city not cause it to overflow").
Because the plaintiff presented sufficient evidence for the jury to conclude that the City was under a duty to maintain Mazie's Gulch as part of its drainage system, it follows that the City failed in this duty by refusing to maintain the gully. However, in order for the City to be held liable for any damages caused by its failure to act, it must also be shown that the water from the City's drainage system, rather than the natural drainage of surface water, caused the damage complained of by the plaintiff. Kennedy v. City of Montgomery,423 So.2d 187, 189 (Ala. 1982) See also, Fricke v. City ofGuntersville, 254 Ala. 370, 48 So.2d 420 (1950); City ofBirmingham *Page 245 v. Flowers, 224 Ala. 279, 140 So. 353 (1932).
After reviewing the evidence presented at trial on this issue of causation, we find that the jury may have reasonably inferred that the City's drainage system caused the erosion problems complained of by Lott. Lott testified that he began noticing a greater flow of water in Mazie's Gulch soon after the subdivision was developed. Indeed, Daphne's former city engineer admitted that the subdivision project had caused a greater volume of water to be emptied into Mazie's Gulch than had been draining naturally into the gully before the project was developed. Although the engineer testified that neither the construction of the subdivision nor any other action on the part of the City caused damage to Lott's property, but rather that other sources had caused the erosion problems, the evidence was such that the jury could have inferred that the large volume of water being channeled into Mazie's Gulch was the cause of the damage to plaintiff's land.
There being, then, at least a scintilla of evidence in support of the plaintiff's theory, the judgment below must be reversed and the cause remanded.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, ALMON and HOUSTON, JJ., concur.