The City of Dothan appeals from a judgment entered on a jury verdict in favor of Teresa Sego and Rickey L. Sego, wife and husband, awarding them $17,000 for property damage and $33,000 for mental anguish. The Segos brought this action against the City, alleging that the City had negligently maintained a drainage ditch adjoining their property and that the City's negligence had *Page 1364 
caused the property to be flooded. The principal issue is whether the circuit court erred in overruling a motion for new trial where the verdict was based on a finding that the City had undertaken a duty to maintain the ditch.
The City moved for a directed verdict on all counts of the complaint. The circuit court entered a directed verdict for the City on other counts not at issue here, but denied the motion for a directed verdict on the count alleging negligent maintenance of the ditch. The City filed a motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial.
The Segos, until September 1992, lived at 109 Massee Drive. Teresa's father lived at 107 Massee Drive, which is within the Dothan city limits, until his death on September 27, 1991. The property at 107 Massee Drive was flooded on several occasions, including instances in 1978, in 1983, in "the summer of 1990," in January 1991, and on August 4, 1991. Teresa, as the executrix of her father's estate, filed this action on July 20, 1992. After she and her husband bought the property from the other heirs, the complaint was amended to add Teresa individually and her husband as plaintiffs.
Flooding occurred at the house at 107 Massee Drive because water from a drainage ditch on property owned by Jerry Creel overflowed onto the 107 Massee property during heavy rains. Teresa testified that when the ditch overflowed, she or her father would telephone the City and a crew of city employees would come to clean the ditch. Teresa testified that she was living at 107 Massee in 1978, and that the ditch overflowed on one occasion when her parents were out of town. On that occasion, according to her testimony, she telephoned the City and city employees came and cleaned the ditch. In 1983, when the ditch overflowed and water came into the house at 107 Massee, Teresa's father telephoned the mayor of Dothan and city employees came and cleared the ditch. Teresa also testified that they later sprayed weedkiller in the ditch. Teresa and Rickey testified that in the summer of 1990 the ditch overflowed and the City was called, whereupon city employees once again cleared the ditch and sprayed weedkiller. In January 1991, there was fencing material discarded in the ditch, and the city employees instructed Jerry Creel to remove it.
Allan Kramer, a city engineer who did subdivision inspection and storm drainage and sanitary sewer work, testified that the water that flooded onto 107 Massee was not "City water" and therefore was not a city problem. He testified that the ditch was not a part of the city drainage system, and in fact, drained only private property. Kramer testified that the City did not have an easement on the Creel property. He also testified that when he inspected the ditch in January 1991 it was filled with weeds, debris, and old fencing material, and that, if that material had been cleaned out, the ditch probably would have carried the water off.
The City has, since the filing of this action, alleviated the flooding problem by widening and deepening the ditch between the two properties. There had been no further flooding at the time of trial, and the Segos testified that the flooding problem no longer existed. The City did not object to the admission of this evidence, although it arguably was evidence of subsequent remedial measures taken by a defendant, which is ordinarily inadmissible. See Phar-Mor, Inc. v. Goff,594 So.2d 1213, 1216 (Ala. 1992).
The City first argues that it owed no duty to maintain the ditch. Ala. Code 1975, § 11-50-50, provides:
 "All cities and towns may make all needful provisions for the drainage of such city or town, may construct and maintain efficient sanitary and stormwater sewers or sewer systems, either within or without the corporate limits of the city or town, may construct and maintain ditches, surface drains, aqueducts and canals and may build and construct underground sewers through private or public property, either within or without the corporate limits of such city or town, but just compensation must first be made for the private property taken, injured or destroyed."
We find this case indistinguishable from Hendrix v. Creel,292 Ala. 541, 297 So.2d 364 (1974), and Hursey v. City ofMobile, *Page 1365 406 So.2d 397 (Ala. 1981). In Hendrix, the City of Dothan had maintained a drainage ditch across Marion J. Creel's property for more than 20 years. Creel changed the direction of the ditch, causing flooding to the property of Hendrix and others, who brought an action against Creel and the City. The Court held first that the City had not acquired an easement by prescription, because the City's use was permissive. The plaintiffs also argued that, because it had maintained and cleared the ditch for more than 20 years,
 "the City owe[d] a duty to the [plaintiffs] and other members of the public to provide and maintain proper drainage for those involved who reside within the corporate limits of the City of Dothan."
292 Ala. at 543, 297 So.2d at 366. This Court rejected that argument and affirmed the judgment sustaining a demurrer to the complaint.
In Hursey, the Hurseys contended that the City of Mobile had constructed and negligently maintained a ditch that caused flooding to their property, but the evidence showed that the owner of the adjoining land had constructed the ditch. The City had a drainage easement on the property and had cleared the ditch two times in the 1970's, but this Court, relying uponHendrix, affirmed a summary judgment for the City:
 "The construction of a ditch by the City pursuant to its easement and maintenance of the existing ditch were discretionary functions; merely because the City exercised its discretion and cleared the ditch two times over a ten-year or longer span of time is not sufficient to impose a duty upon the City to carefully maintain the ditch. We agree with the trial court that Hendrix is controlling and that the City owed no duty to maintain the ditch."
406 So.2d at 398. See, also, Chatman v. City of Prichard,431 So.2d 532 (Ala. 1983), in which the Court held that the City of Prichard had no duty to maintain a culvert that had been installed by a landowner in a drainage ditch as to which the City had an easement, citing Hursey as controlling.
In Kennedy v. City of Montgomery, 423 So.2d 187 (Ala. 1982), the Court reversed a summary judgment for the City of Montgomery on a claim alleging that the City had negligently caused flooding of the plaintiffs' homes, 423 So.2d at 188. A drainage ditch ran along the rear boundary of the plaintiffs' property. The City held a drainage easement along this ditch, and it inspected and cleaned the ditch as part of its routine maintenance. The ditch emptied into a 12-inch pipe, which was inadequate to accommodate the water from the ditch in periods of above-average rainfall and which, therefore, caused water to back up and overflow the ditch during heavy rains. The Court distinguished Hendrix and Hursey on the grounds that the City of Montgomery had undertaken control of the drainage system for the plaintiffs' properties and that water from the City's drainage system caused the flooding problems.
In City of Mobile v. Jackson, 474 So.2d 644 (Ala. 1985), this Court affirmed a judgment awarding damages against the City of Mobile for its negligent maintenance of a drainage ditch. The City had constructed a drainage system around the Jacksons' property:
 "The Jacksons alerted the Public Works Department of the City of Mobile, and improvements were made along the service road in front of the Jacksons' property consisting of an earthen berm running on the west side of the service road and the ditch fronting Dauphin Island Parkway. This was done to increase the storage capacity of the ditch. After installing the berm, the city cut slits or weirs into the berm. The berm is higher than the Jacksons' property. On April 13, 1980, waters flowing from the ditch and service road entered the Jackson home. The water caused substantial damage to the structure and to personal property located in the house.
 "The Jacksons vacated the premises and lived in a camper parked in their backyard. After the April 13, 1980, event, Mr. Jim Chapman, Assistant City Engineer, as a result of calls by Mr. Jackson, viewed the Jackson property and recommended that the two culverts be changed to one 48-inch culvert and that a 36-inch pipe be installed to the rear of the property to handle the *Page 1366 
waters running along the rear of the Jackson property.
 "These recommendations were not acted upon before May 17, 1980, when water again entered the Jackson home and caused further damage."
474 So.2d at 646. The Court held that the evidence supported the verdict and the judgment based upon a finding of negligence.
The parties also cite Lott v. City of Daphne, 539 So.2d 241
(Ala. 1989). The City's storm water system emptied into a large natural gully, "Mazie's Gulch," running across Lott's land into Mobile Bay. The City approved construction of a subdivision, with the requirement that the developer connect the subdivision's storm water drainage to the city system that emptied into Mazie's Gulch. After the subdivision was built, Lott experienced significant erosion of his property from the water running through Mazie's Gulch. The Court reversed a judgment based on a directed verdict for the City, holding that Lott could recover if he could show that his damage was caused by the water channeled into Mazie's Gulch by the City drainage system, rather than by natural drainage of surface water. Lott
is inapplicable here, because there is no evidence that the City of Dothan had channeled water from its drainage system into the ditch on Creel's property.
This case falls under the rule of Hendrix and Hursey, not the rule of Kennedy and Jackson. The City does not have a drainage easement and does not routinely maintain the ditch, but has only responded to emergency calls by Teresa Sego or her father. For these reasons, and because the problem is not due to an inadequate drainage pipe installed by the City, this case is unlike Kennedy. Here, as in Hendrix and Hursey, the City has occasionally cleared a ditch that was naturally occurring on, or was constructed by the owner of, the land adjoining the plaintiffs' property. The City did not thereby undertake a duty to exercise due care in maintaining the ditch so that it would not flood the plaintiffs' property or a duty to provide for drainage of the plaintiffs' property. By contrast, in Jackson
the City constructed a ditch and earthworks to channel drainage from the Dauphin Island Parkway and a service road so as to prevent flooding of the plaintiffs' property, which was below the grade of the roads. Having undertaken to construct such a drainage system, the City was under a duty to construct and maintain it with due care to prevent flooding of the Jacksons' property. The City of Dothan did not construct the ditch at issue here, and its occasional clearing of the ditch in response to requests from Teresa Sego and her father did not constitute such an undertaking as would support a negligence action, unlike the City of Mobile's drainage project inJackson.
Thus, the judgment is due to be, and it is hereby, reversed, and the cause is remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, ALMON, SHORES, HOUSTON, INGRAM and COOK, JJ., concur.