Royal Automotive, Inc., Saturn of Birmingham, Inc., Vulcan Lincoln-Mercury, Inc., and Trimensions, Inc. (collectively "the businesses"), sued the City of Vestavia Hills and the City of Hoover in the Jefferson Circuit Court, alleging trespass, nuisance, and negligent maintenance of a natural waterway known as Patton Creek. The businesses' claims arise from damage caused by the flooding of Patton Creek in 2002. Vulcan-Lincoln Mercury also alleges *Page 155 
damage from a flood of Patton Creek that occurred in 2004. The businesses appeal from a summary judgment in favor of Vestavia and Hoover. We affirm.
 I. Facts and Procedural History
Each of the businesses operates or has previously operated in locations that are within the city limits of Vestavia and near Patton Creek. Royal Automotive, Saturn of Birmingham, and Vulcan Lincoln-Mercury are automobile dealerships whose operations are located at the intersection of U.S. Highway 31, Interstate 65, Columbiana Road, and Tyler Road. Trimensions is a collegiate-products manufacturer that previously operated in the Southpark Shopping Center along U.S. Highway 31. Patton Creek flows near the previous location of Trimensions, then behind the Vulcan Lincoln-Mercury dealership, through the property on which Royal Automotive and Saturn of Birmingham are located, and then into Hoover.
The headwaters of Patton Creek originate on Shades Mountain and flow southwesterly down the mountain — through Vestavia, Hoover, and unincorporated areas of Jefferson County — before emptying into the Cahaba River. Specifically, Patton Creek flows from Vestavia into Hoover, passes under the Southland Drive bridge, enters unincorporated Jefferson County for approximately one mile, and then re-enters Hoover near Hummingbird Lane.
Vestavia asserts that Patton Creek existed before Vestavia was incorporated as a municipality and that the area where the businesses are or were located has served as a natural flood basin for hundreds of years. In an affidavit, Vestavia's hydrology expert, who created an official flood map of Patton Creek in 2006, states that because the Patton Creek flood basin is relatively short and wide and the hillsides abutting the basin are quite steep, storm-water runoff tends to concentrate quickly and thus flood surrounding areas, including the areas where the businesses are or were located.
The businesses and private citizens have frequently asked Vestavia to clean and to maintain Patton Creek in order to prevent the flooding of surrounding areas. In response to these requests, Vestavia cleaned and dredged Patton Creek in 1985, 1996, and 2004. These dredgings included privately owned portions of Patton Creek, such as the portion of Patton Creek that traverses the Royal Automotive property. In 1985 Vestavia contracted with a construction company "for clearing and grubbing, drainage ditch clean-out (approximately 17,000 cubic yards), some limited rock rip rap and grassing" of Patton Creek for approximately $108,500. In 1996 Vestavia paid the same construction company approximately $135,000 for similar work on Patton Creek. In 2002 Vestavia also allocated $142,560 for dredging Patton Creek; this dredging occurred in the summer of 2004.
Aside from these three dredging projects, Vestavia asserts that its only other maintenance of Patton Creek has been removal of debris caught in ditches and channels of the creek near city roads. However, the businesses assert that Vestavia has also cleaned and inspected blocked culverts of Patton Creek as often as once or twice a week, performed storm-water maintenance on portions of Patton Creek when flooding impacted a public road, had a city employee walk Patton Creek to check for drainage problems and beaver dams, monitored the aggregate effect of upstream development on storm-water runoff, and permitted developers to rechannel the natural course of Patton Creek at the Olde Towne shopping center. Vestavia asserts that it had no part in initiating or directing the channeling of Patton *Page 156 
Creek at the Olde Towne shopping center. Vestavia acknowledges that developers of the Olde Towne shopping center enlisted engineering firms to straighten, widen, and deepen the portion of Patton Creek flowing through the property on which the center is located.
Since 2000 Hoover asserts that it has cleaned portions of Patton Creek on approximately four or five occasions in response to complaints of residents living along the creek. From about 1985 to 1995 Hoover periodically inspected and cleaned Patton Creek in the Hummingbird Lane area. As part of a 2004 public-works project, Hoover removed silt from two partially blocked spans of the Southland Drive bridge. In late 2004, Hoover also removed an island of silt in Patton Creek a few hundred feet upstream from the Southland Drive bridge at Vestavia's request. The businesses assert that Hoover has also removed or realigned rocks and sediment along Patton Creek.
On September 22, 2002, Patton Creek overflowed its banks and damaged the businesses' property, particularly automobiles parked on the lots of Royal Automotive, Saturn of Birmingham, and Vulcan Lincoln-Mercury. The businesses describe the rainfall that occurred on September 22, 2002, as significant and torrential. According to the businesses' meteorology expert, the maximum 1-hour rainfall was 2.4 inches, which translates to a 10-year rain event. The meteorology expert also concluded that the maximum 3-hour rainfall was 4.57 inches and that the maximum 6-hour rainfall was 5.31 inches, both of which translate to 50-year rain events. The businesses' meteorology expert testified that rainfall over a 12-hour period on September 22, 2002, translated to a 25-year rain event.
On July 26, 2004, as the result of heavy rainfall, Patton Creek again overflowed its banks and damaged property at Vulcan Lincoln-Mercury. According to the businesses' meteorology expert, the maximum 1-hour rainfall was 2.87 inches, which translates to between a 10-year and a 25-year rain event. The meteorology expert also concluded that the maximum 3-hour rain event was 3.58 inches, which translates to a 10-year rain event. The businesses' meteorology expert concluded that over five and a half hours the Patton Creek drainage basin experienced 3.98 inches of rain.
The businesses timely filed both their notices of loss with Vestavia and Hoover concerning the 2002 and 2004 floods and their complaints seeking recovery from Vestavia and Hoover for negligent maintenance of Patton Creek, nuisance, and trespass.[1] The Jefferson Circuit Court found that Vestavia and Hoover did not have a duty to maintain Patton Creek and entered a summary judgment in their favor. The trial court's order stated that the businesses' negligence claims fail because Vestavia and Hoover had no duty to maintain the creek; therefore, the claims of nuisance and trespass also necessarily fail. See Hilliard v. City of Huntsville,585 So.2d 889, 893 (Ala. 1991) ("the viability of a negligence action against a municipality . . . determines the success or failure of a nuisance action based upon the same facts," citing § 11-47-190, Ala. Code 1975). The businesses then appealed.
 II. Standard of Review "The standard by which this Court will review a motion for summary judgment is well established: *Page 157 
 "`The principles of law applicable to a motion for summary judgment are well settled. To grant such a motion, the trial court must determine that the evidence does not create a genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. When the movant makes a prima facie showing that those two conditions are satisfied, the burden shifts to the nonmovant to present "substantial evidence" creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98
(Ala. 1989); § 12-21-12(d)[,] Ala. Code 1975. Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871
(Ala. 1989).
 "`In our review of a summary judgment, we apply the same standard as the trial court. Ex parte Lumpkin, 702 So.2d 462, 465 (Ala. 1997). Our review is subject to the caveat that we must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala. 1990).'"
Payton v. Monsanto Co., 801 So.2d 829, 832-33
(Ala. 2001) (quoting Ex parte Alfa Mut. Gen. Ins. Co.,742 So.2d 182, 184 (Ala. 1999)).
 III. Analysis
A. Contentions of the parties.
The businesses contend that the trial court improperly entered a summary judgment in favor of Vestavia and Hoover because, they argue, Vestavia and Hoover have both undertaken a duty to maintain Patton Creek. The businesses recognize that although a municipality in Alabama has no duty to create or maintain a drainage system, this Court has held that "once a municipality undertakes to either construct or maintain a drainage system, a duty of care exists, and a municipality may be liable for damages to a property owner whose property is damaged as a result of the negligent construction or maintenance of a drainage system by the City." Lott v. City of Daphne,539 So.2d 241, 244 (Ala. 1989). The businesses contend that they have presented substantial evidence indicating that Patton Creek is part of Vestavia's and Hoover's drainage systems and that Vestavia and Hoover both undertook maintenance of Patton Creek. Therefore, the businesses argue that under Lott
Vestavia's and Hoover's maintenance of Patton Creek imposes on them a continuing duty to maintain Patton Creek. The businesses further argue that Vestavia and Hoover breached this duty by failing to regularly monitor the aggregate effects of upstream storm-water runoff from new development and by only sporadically dredging and cleaning Patton Creek.
The businesses rely heavily on this Court's holding inLott to contend that Vestavia and Hoover had a duty to maintain Patton Creek. In Lott, a private landowner sued the City of Daphne alleging that Daphne's negligent maintenance of a storm-drainage system resulted in damage to his property, specifically erosion. 539 So.2d at 242-43. Daphne had constructed a drainage system that "consist[ed] of a series of underground pipes and junction boxes that eventually discharge[d] storm water from the area surrounding Mazie's Gulch [a natural gully that empties into Mobile Bay] into the head of Mazie's Gulch." 539 So.2d at 243. When a subdivision was developed within the drainage *Page 158 
basin of Mazie's Gulch, Daphne attempted "to offset the effect of an increased volume and velocity of water running from the subdivision into Mazie's Gulch [by] requir[ing] the developers to install an energy suppressor at the head of Mazie's Gulch." 539 So.2d at 243. Mazie's Gulch traversed the landowner's property, and he alleged that the increased water from the subdivision, directed to the head of the gulch by Daphne's drainage system, caused his property to erode.539 So.2d at 243.
Daphne argued that it had never undertaken maintenance of Mazie's Gulch and that it was therefore not liable for the erosion of the landowner's property. 539 So.2d at 243-44. However, this Court noted that "once a municipality undertakes to maintain a `drainage system,' a duty of care attaches in the maintenance thereof" and held that the landowner presented sufficient evidence from which a jury could conclude that Daphne had undertaken to construct and/or maintain Mazie's Gulch as part of its drainage system and therefore had undertaken the duty to maintain Mazie's Gulch.539 So.2d at 244-45. Thus, this Court held that a municipality may have a duty to maintain a natural waterway that the municipality incorporates into its drainage system.
The businesses assert that in Lott this Court held that a jury could conclude that Daphne undertook a duty to maintain Mazie's Gulch, in part, because the mayor of Daphne testified that Daphne "had been using Mazie's Gulch as an important part of [Daphne's] drainage system for the surrounding area." Lott, 539 So.2d at 243-44. The businesses note that Vestavia's former city engineer similarly testified that Patton Creek is "one of the main drainage basins in the over-the-mountain area period — from Shades Mountain to the South" and that the mayor of Vestavia testified that Patton Creek is one of the "primary conduits for storm water through Vestavia." The businesses also contend that Vestavia has performed substantially more work on Patton Creek than Daphne had performed on Mazie's Gulch by spending more than $100,000 to dredge Patton Creek on each of three occasions, by routinely cleaning and inspecting the creek and its culverts, and by monitoring the effects on the creek of several upstream developments.
The businesses contend that Hoover also has a duty to maintain Patton Creek because, they say, Hoover's maintenance and cleaning of portions of Patton Creek has been neither isolated nor unique. The businesses assert that they have presented substantial evidence indicating that Hoover regularly inspects and maintains Patton Creek. The businesses also assert that there is substantial evidence indicating that Hoover incorporated Patton Creek into its storm-water drainage system because, they contend, Hoover installed a storm-water pipe on private property in 2006 to redirect storm water as it flowed into Patton Creek and did similar work on a tributary to Patton Creek.
Vestavia contends that the businesses' claim of negligent maintenance fails as a matter of law because, it says, it never undertook the duty to maintain Patton Creek. Vestavia contends that its dredging of Patton Creek and cleaning of culverts to prevent the flooding of public roads is insufficient maintenance of Patton Creek to impose a continuing duty to maintain Patton Creek. Vestavia relies on Hursey v. City ofMobile, 406 So.2d 397 (Ala. 1981), and City of Dothan v.Sego, 646 So.2d 1363 (Ala. 1994), for the proposition that a municipality's discretionary and sporadic maintenance of a drainage ditch is insufficient to impose a continuing duty to maintain a drainage ditch. In Hursey, this Court affirmed a summary judgment in favor of the City of Mobile by concluding *Page 159 
that Mobile did not have a duty to maintain a drainage ditch. This Court held:
 "The construction of a ditch by the City pursuant to its easement and maintenance of the existing ditch were discretionary functions; merely because the City exercised its discretion and cleared the ditch two times over a ten-year span of time is not sufficient to impose a duty upon the City to carefully maintain the ditch."
Hursey, 406 So.2d at 398.
In Sego, this Court addressed whether a city had undertaken the duty to maintain a drainage ditch by cleaning the ditch 3 times over a 22-year period, each time at the request of the owners of land abutting the ditch. This Court held:
 "Here, as in Hendrix [v. Creel, 292 Ala. 541, 297 So.2d 364 (1974),] and Hursey, the City has occasionally cleared a ditch that was naturally occurring on, or was constructed by the owner of, the land adjoining the plaintiffs' property. The City did not thereby undertake a duty to exercise due care in maintaining the ditch so that it would not flood the plaintiffs' property or a duty to provide for drainage of the plaintiffs' property."
Sego, 646 So.2d at 1366.
Hoover likewise contends that its maintenance of Patton Creek is insufficient to impose on it a continuing duty to maintain Patton Creek. Hoover first contends that because it is downstream from the businesses, it never assumed a duty to maintain any portion of Patton Creek that could adversely affect their property. As is the case with Vestavia, Hoover also contends that the facts of the present case are consistent with those in the Hursey, Hendrix, and Sego
line of decisions from this Court, holding that discretionary and sporadic maintenance of a drainage system is insufficient to impose a continuing duty to maintain the system. Hoover contends that, like the City of Dothan in Sego, its 2004 public-works project to remove silt from the area upstream from and under Southland Drive bridge was discretionary. In exercising its discretion and removing silt from Patton Creek in order to assist a neighboring city on one occasion and sporadically cleaning debris from Patton Creek at the requests of private citizens, Hoover asserts, it did not undertake a duty to maintain any portion of Patton Creek.
The businesses reply that contrary to Vestavia's and Hoover's assertions, Sego and Hursey are not controlling on the duty issue because, they say, in both of those cases there was no evidence indicating that the cities had incorporated the ditches into their drainage systems. According to the businesses, Vestavia channels storm water into Patton Creek through its constructed drainage system and allowed developers to rechannel a significant portion of the creek. The businesses also assert that Hoover installed a new storm-water pipe on private property in 2006 to redirect storm water as it flowed into Patton Creek and did similar work on a tributary to Patton Creek. Thus, the businesses contend that the facts of Sego and Hursey are vastly different from those here, where Vestavia and Hoover channeled storm water into Patton Creek, incorporated Patton Creek into their drainage systems, spent hundreds of thousands of dollars dredging Patton Creek, monitored the effects of development on the creek, and periodically inspected Patton Creek as part of the cities' public-works functions.
B. Whether Vestavia or Hoover has assumed a duty byincorporating Patton Creek into its respective drainagesystem.
Surface water has flowed down adjoining mountainous terrain into and through Patton Creek for hundreds of years. There is no evidence indicating *Page 160 
that Vestavia or Hoover has constructed devices to direct water that would not otherwise naturally flow through or into Patton Creek. In Lott, this Court held that "in order for the City to be held liable for any damages caused by its failure to act, it must also be shown that the water fromthe City's drainage system, rather than the natural drainage ofsurface water, caused the damage complained of by theplaintiff." 539 So.2d at 244 (emphasis added). UnlikeLott, in which Daphne purposefully constructed "a series of underground pipes and junction boxes" to redirect surface water through one area of Mazie's Gulch, there is no evidence here indicating that Vestavia or Hoover constructed a drainage system that directed surface water, other than by natural drainage, into Patton Creek. We conclude that neither Vestavia nor Hoover has undertaken a duty to maintain Patton Creek because the cities have not purposefully directed into Patton Creek water that would not otherwise naturally flow through the creek.
C. Whether Vestavia or Hoover has assumed a duty byperiodic maintenance of Patton Creek.
Three dredgings of Patton Creek by Vestavia over a 23-year period and the removal of debris in ditches and channels of the creek to prevent the flooding of public roads do not constitute undertaking maintenance of the creek. Such occasional activity constitutes the sporadic exercise of discretion to meet exigent circumstances. See Sego, 646 So.2d at 1366;Hursey, 406 So.2d at 398. "Sporadic" is defined as "occurring occasionally, singly, or in irregular or random instances." Merriam-Webster's Collegiate Dictionary
1207 (11th ed. 2003). The fact that Vestavia spent more than $100,000 per dredging on 3 occasions over a 23-year period does not serve to bring such intermittent activity above the level of sporadic activity. Further, we decline to hold that evidence indicating that Vestavia monitored the effects of storm-water runoff from some residential and commercial developments is sufficient evidence of the assumption of a duty to maintain the creek.
Hoover's occasional cleaning of Patton Creek in response to requests from residents of adjoining property and one public-works project to remove silt and debris from the creek is also insufficient to support a finding that Hoover undertook maintenance of Patton Creek.
Absent a duty to maintain Patton Creek, Vestavia and Hoover cannot be held liable for negligent maintenance of the creek. See Glass v. Birmingham Southern R.R., 905 So.2d 789,794 (Ala. 2004) ("In any negligence case, the plaintiff bears the burden of proving the existence of a duty owed by the defendant, a breach of that duty, causation, and damage."). The trial court correctly found that because the businesses' negligent-maintenance claims fail, their nuisance and trespass claims must also fail. See Hilliard, 585 So.2d at 893;City of Prattville v. Corley, 892 So.2d 845, 848
(Ala. 2003).
 IV. Conclusion
Because we conclude that neither Vestavia nor Hoover has undertaken a duty to maintain Patton Creek, we pretermit consideration of all other arguments by the businesses, Vestavia, and Hoover. We affirm the summary judgment in favor of Vestavia and Hoover.
1061313 — AFFIRMED.
1071152 — AFFIRMED.
COBB, C.J., and SEE, WOODALL, STUART, SMITH, BOLIN, PARKER, and MURDOCK, JJ., concur.
[1] A subrogation action by Motors Insurance Company, which insures the inventory of Royal Automotive, Saturn of Birmingham, and Vulcan Lincoln-Mercury (CV-05-684), was consolidated with the present case. However, Motors Insurance Company did not appeal the summary judgment entered against it. *Page 161