MOORE, Chief Justice
(concurring in part and dissenting in part).
Marshall Dean Smith has appealed the summary judgment entered by the Escam-bia Circuit Court (“the trial court”) in favor of the City of Atmore (“the City”) in Smith’s lawsuit alleging claims of negligent design and construction of the City’s water-drainage system, negligent maintenance of the City’s water-drainage system, continuing trespass, and nuisance. Although I concur to affirm the summary judgment as to the negligent-design and -construction claims, I respectfully dissent from this Court’s decision to affirm the summary judgment as to the other claims because I believe that Smith presented sufficient evidence to send his negligent-maintenance claim, and, thus, his trespass and nuisance claims, see note 1 and accompanying text, infra, insofar as those claims related to .the final two flooding events alleged by Smith, to a jury.
When viewed in the light most favorable to Smith, the nonmovant, see Nationwide Prop. & Cas. Ins. Co. v. DPF Architects, P.C., 792 So.2d 369, 372 (Ala.2001), the summary-judgment evidence reflects the following. Smith owns two properties in the City, both on Tatom Avenue (“the Tatom Avenue properties”). Those properties are located near the Highland Avenue drainage system in an area known for its flooding.. Around 1984 a culvert was built in this area to enable water to drain from the culvert into a ditch that is approximately four blocks from the Tatom Avenue properties. The City hired engineer Euel Screws in 2005 or 2006 to examine problems with the ditch into which the culvert feeds. Screws determined that the culvert and the ditch were not large enough, which consequently caused them to overflow with water. Screws recommended that the City install larger piping for the culvert as well as an additional ditch into which to drain the water. Screws did not determine how much water the current drains in the culvert could hold. He informed the City that he needed to conduct additional studies to assess whether his recommendations would alleviate the flooding. Despite his recommendations, the City did not hire Screws to work on the drainage system, nor did it implement any of his- suggested repairs.
Smith purchased the Tatom Avenue properties in 2008. The properties subsequently flooded at least five times between 2008 and 2010. After the first flooding event, Smith telephoned Don Whatley, the City’s street superintendent, who informed Smith, that the area around the Tatom Avenue properties had “flooded for several, several years.” After the fourth flooding event, Smith telephoned the City’s code-enforcement officer, Chris Black, who referred _ Smith to Whatley. This time Whatley told Smith that the area around the Tatom Avenue properties had “flooded forever.”
Smith sued the City, among other defendants, in 2010, asserting claims of negligent design and construction of the drainage system, negligent' maintenance of the drainage system, continuing trespass, and nuisance. Smith retained Kenneth Underwood, an engineer, to serve as an expert witness. Underwood reviewed the deposition testimony of Screws .and ariel photographs and maps of the area around the Tatom Avenue properties, visited the area, and researched rainfall data for the area.
*1182 Underwood determined that Screws had been correct in believing that the culvert was not large enough to hold regular rainfall without flooding the area around the Tatom Avenue properties. Underwood explained that “[t]he design of that storm water drainage system has not been maintained to match increased runoff’ and that the size of the existing culvert “is a very likely contributor” to the' flooding issues. Underwood also stated that the drainage ditch had not “been maintained by excavation ... to accommodate storm water runoff without causing flooding during at least five events which have caused” the flooding of the Tatom Avenue properties. Underwood admitted that, although he agreed with Screws that the piping for the culvert was undersized, he needed to complete more “field work” to determine how big the culvert should be to prevent flooding. He opined that the piping for the culvert was “a very likely contributor” to — and “could be a partial cause” of — the flooding at the Tatom Avenue properties.
The trial court entered a summary judgment for the City, holding that Smith’s negligent-design and -construction claims, as well as his negligent-maintenance claim, his trespass claim, and his nuisance claim, insofar as those claims were based on the first three flooding events, were barred by § 11- — 47—23, Ala.Code 1975, because those claims were not presented to the City within six months of when they accrued. The trial court concluded that Smith had failed to present substantial evidence of the City’s negligent maintenance of the drainage system, under the requirements of § 11-47-190, Ala.Code 1975, with respect to the two most recent flooding events; specifically, the court held, Smith had failed to prove causation. The trial court also entered a summary judgment on Smith’s nuisance and trespass claims as to the two most recent flooding events because, it said, Alabama courts have held that a plaintiffs nuisance and trespass claims based on the same facts as the plaintiffs negligence claims under § 11-47-190 survive or perish based on the viability of the negligence claims.[1]
Smith appealed the summary judgment in favor of the City to this Court, which today affirms the judgment, without an opinion.
Because the area surrounding the Ta-tom Avenue properties has “flooded forever,” it has probably continued to flood since 2010, when this case began. It is safe to presume, as well, that the Tatom Avenue properties will flood again if the City has not yet taken the corrective measures recommended by Screws and echoed by Underwood. Although the City has known since at least 2005 that undersized piping for the culvert is likely the cause of the flooding, the courts have relieved the City of any responsibility for fixing the culvert because causation has not been, in the courts’ view, sufficiently demonstrated.
To demonstrate that the City'was liable for negligent maintenance, Smith was required to
“present evidence from which a jury could reasonably conclude that the flooding of [his] property was proximately caused by the City’s failure to provide appropriate upkeep for the storm-drain *1183 age system in its existing condition, ... rather than by the City’s failure to correct any alleged design or construction problems with that system.”
Reichert v. City of Mobile, 776 So.2d 761, 765-66 (Ala.2000). In my view, Smith presented substantial evidence of -the City’s negligent maintenance of the drainage system when he showed that the City was informed of a defect in the culvert that was progressing over time; that the City had an opportunity to correct the defect or upgrade the piping for the culvert that was growing increasingly susceptible to flooding; and that the City did not hire Screws or anyone else to correct the defect or upgrade and maintain the piping. I believe the testimony of Screws and Underwood on this issue constituted substantial- evidence, presented by experts, demonstrating that the City was derelict in responding to a known defective condition of the culvert.
I am concerned, as well, that the courts have encouraged the City to continue ignoring known problems with the piping for the culvert and the drainage system; The reason Screws was unable to provide more evidence of causation is because the City never hired him to do the necessary Work to alleviate the flooding. If the City continues to sit on its hands, as it were, will it continue to profit from inactivity? Is the City better off not hiring anyone to repair the conditions leading to the flooding because doing so will ensure that causation cannot be determined? Smith and others in his position, after all, cannot legally hire someone to work on the piping for the culvert or the drainage system that is Owned and operated by the City; thus, they are at a distinct disadvantage and must wait anxiously for the City to correct a long-standing problem that is sure to persist. I am concerned that the courts are encouraging the City’s profitable idleness by closing their eyes to substantial evidence that should have gone before a jury.

. See, e.g., Hilliard v. City of Huntsville, 585 So.2d 889, 893 (Ala.1991) (holding that "the viability of a negligence action against a municipality under § 11-47-190 determines the success or failure of a nuisance action based upon the same facts”); Long v. City of Athens, 24 So.3d 1110, 1116 (Ala.Civ.App.2009) (holding that, “because the trial court properly entered the summary judgment on the Longs' negligent-maintenance claim, the trial court’s disposal of the Longs’ nuisance and trespass claims was also proper”); cf. Royal Auto., Inc. v. City of Vestavia Hills, 995 So.2d 154, 160 (Ala.2008).